UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
    In re:                                                                                          Chapter 7
                                                                                   Case No. 11-74670-reg

    JAMES TYLEE and CARRIE TYLEE,

                         Debtors.
-----------------------------------------------------------------x

    GLEN SAVIANO and KAREN SAVIANO,

                         Plaintiffs,
                                                                                Adv. Proc. No. 11-09488-reg
    against

    JAMES TYLEE and CARRIE TYLEE,

                         Defendants.
-----------------------------------------------------------------x

## DECISION AFTER TRIAL

This matter is before the Court pursuant to an adversary proceeding commenced by Glen and Karen Saviano ("Plaintiffs") against James Tylee and Carrie Tylee ("Defendants" or "Debtors"). The Plaintiffs seek to revoke the Debtors' Chapter 7 discharge and seek a turnover of property by the Debtors to the Chapter 7 Trustee. *See* 11 U.S.C. §§ 105, 542, and 727. The Plaintiffs assert that the Debtors' discharge was obtained through fraud in their bankruptcy petition including failure to list the Plaintiffs as creditors, misrepresenting the Debtors' true income, and failure to disclose assets. The Defendants argue that they did not fail to list assets on their petition, as the omitted assets are worthless and the Debtors' income changed before filing bankruptcy. Additionally, the Defendants stated that the failure to list the Plaintiffs as creditors in the original petition was attributable the Debtors' attorney.

The Court finds that the Plaintiffs established all elements required to revoke the Defendants' discharge pursuant to § 727(d)(1). The Plaintiffs showed, by a preponderance of the

1

evidence, that the Defendants obtained their discharge by submitting false and misleading documents to the Court regarding their income and assets. Additionally, the Plaintiffs established that they could not have brought a timely § 727 motion prior to the Debtors receiving their discharge. The Plaintiffs first learned of the Debtors' bankruptcy case one day prior to the Debtors receiving their discharge, when the Plaintiffs were added as creditors of the Debtors' estate. Regardless of why the Debtors omitted the Plaintiffs as creditors in the original petition, this omission deprived the Plaintiffs of the opportunity to commence a timely investigation into the Debtors' conduct. Section 727(d)(1) remedies this by giving creditors such as the Plaintiffs additional time to commence an action to revoke the Debtors' discharge. The Defendants' assertion that these representations were not false is implausible, and is not a credible defense against the Plaintiff's prima facie claims. Therefore, the Defendants' discharge shall be revoked pursuant to § 727(d)(1).

The Plaintiffs also seek entry of an order directing the Defendants to turnover certain omitted assets to the Chapter 7 Trustee ("Trustee") pursuant to 11 U.S.C. § 542(a). This cause of action is denied due to the Plaintiffs' lack of standing to bring such action. This right is reserved for the Trustee.

**PROCEDURAL HISTORY**

On June 29, 2011, the Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code and Marc A. Pergament was appointed as the Trustee. On August 12, 2011, the Chapter 7 Trustee determined that there would be no distribution to creditors, as there were no non-exempt assets in the estate. On November 1, 2011, the Plaintiffs were added as creditors of the Debtors, and one day later, on November 2, 2011, the Debtors received their discharge.

On November 10, 2011, the Plaintiffs commenced this adversary proceeding to revoke the Debtors' discharge. The Defendants filed their answer on February 6, 2012, claiming that many of the allegations in the complaint were false. The Debtors then filed an amended complaint on April 10, 2012 stating causes of action including: (1) revocation of the Debtors' discharge pursuant to § 727(d)(1), (2) revocation of the Debtors' discharge pursuant to § 727(d)(2) and (3) directing the Debtors to deliver to the Trustee or account for their business property omitted from the petition or its cash value pursuant to § 542(a). On August 30, 2012, the Defendants filed an answer and counterclaim to the amended complaint, asserting that the Plaintiffs violated the automatic stay by pursuing an eviction proceeding against the Debtors in state court after the bankruptcy filing and asking for three times their court expenses, as well as criminal sanctions against the Plaintiffs.

On May 21, 2012, the Trustee revoked his no-asset statement, on the basis that he discovered assets of the estate. However, on March 12, 2013, the Trustee once again filed a no-asset report and concluded that there was no property available for distribution.

On June 10, 2013, the Plaintiffs and the Defendants filed a Joint Pretrial Memorandum. The Court conducted a trial on June 13, 2013. The Defendant, James Tylee, and both of the Plaintiffs testified at trial. Pursuant to the Joint Pretrial Memorandum, the Plaintiffs' Exhibits 1-13 were admitted into evidence without objection. The Plaintiffs' Exhibit 14, the Debtors' amended bankruptcy schedule, was admitted during trial without objection. Trial Transcript ("Trial Tr."), p. 110. Thereafter, the adversary proceeding was marked submitted.

## FACTS

As of December 2010, the Defendant, James Tylee, was employed by Bank of America and earned just under $110,000 per year. Trial Tr., p. 7-8; Plaintiffs' Ex. 1. However, this employment ended on December 10, 2010, after which the Defendant claims he only received a severance of medical insurance and unemployment of $1,740 per month. Trial Tr., p. 6-7, 25. The Plaintiffs were the Defendants' landlords during this time period, and continuing through September of 2011. Trial Tr., p. 27. The rental agreement entered into between the parties required the Debtors to pay $2,300 per month. Trial Tr., p. 28.

The Defendants stopped paying rent as of April 2011, and the Plaintiffs thereafter commenced an eviction proceeding in New York State Court in the Sixth District, Suffolk County District Court on April 25, 2011 ("State Court Proceeding"). Trial Tr., p. 27; Plaintiffs' Ex. 11. The Defendants' answer to the complaint in the State Court Proceeding, signed and dated on April 26, 2011, stated that the Defendant, James Tylee, earned $403.87 per day as income. Trial Tr., p. 12; Plaintiffs' Ex. 12. A Judgment of Possession and a warrant of eviction were entered in favor of the Plaintiffs. Trial Tr., p. 39. The Debtor filed an Order to Show Cause to vacate this judgment on June 28, 2011, one day before the Debtors filed their bankruptcy petition on June 29, 2011 ("Petition Date"). Trial Tr., p. 41-44. The Judge in the State Court Proceeding later vacated these judgments after the Debtor appeared on July 6, 2011 and informed the court of the bankruptcy case. Trial Tr., p. 46-47.

In relation to the landlord-tenant relationship between the parties, the Defendant called the Plaintiffs on September 6, 2011. Trial Tr., p. 116. He told them he was ready to move and that if the Plaintiffs paid him $7,000, he would be out in two weeks, but if not, the Defendants would be in the house "until it snowed." *Id.* The Defendant admitted on the phone that this was extortion. Trial Tr., p. 117. Both Plaintiffs were on the phone at the time and both heard the

Defendant make these statements. Trial Tr., p. 124. After this, at some point in September, the Defendants moved to Georgia but did not tell the Plaintiffs they moved, nor did they give back the keys to the property. Trial Tr., p. 120. The Plaintiffs were unable to obtain the property until December 2011 after a legal eviction process. Trial Tr., p. 121-122.

When the Debtors initially filed their bankruptcy petition, they failed to list the Plaintiffs as creditors, even though they owed rent for the previous month. Trial Tr., p. 35. Additionally, the monthly income and means test calculation the Defendants submitted with their petition did not reflect the $403.87 per day in income listed in the state court documents. Trial Tr., p. 15. During the trial, the Defendant, James Tylee, could not explain this discrepancy. Trial Tr., p. 20-22. The Defendants failed to list the State Court Proceeding in the petition and argued that their attorney failed to include it. Trial Tr., p. 9; Plaintiffs' Ex. 1. The Defendants' Schedule J attached to the petition listed rent expenses of $2,300 per month. Trial Tr., p. 48; Plaintiffs' Ex. 3. However, the Defendants admitted during trial that they had not paid rent since April 2011 and knew as of the Petition Date that they were not going to reside in the house or pay rent in the future, as they agreed with the Plaintiffs to vacate the property. Trial Tr., p. 53-54.[1] The Defendants failed to submit required tax returns with their petition, even after numerous document requests by the Plaintiffs. Trial Tr., p. 65-66. The Defendants claim they do not have copies of any tax returns for the past few years because they filed their tax returns electronically. Trial Tr., p. 85-87. On November 1, 2011, one day before the Defendants received their discharge, they filed an amended Schedule F to include the Plaintiffs as unsecured creditors. Trial Tr., p. 35-37; Plaintiffs' Ex. 14. However, the Defendant, James Tylee, stated at trial that he did not file this amendment and his attorney filed it without his permission. Trial Tr., p. 36.

---

[1] While the Defendants did not pay rent post-petition, they refused to move out of the premises in violation of their agreement. Trial Tr., p. 54.

The Plaintiff, Glen Saviano, stated at trial that he had no prior knowledge of the bankruptcy and had not received any notice or communication before being added as creditors. Trial Tr., p. 115.

The Plaintiffs assert that the Defendant, James Tylee, also received income from his role as C.E.O. and owner of C-Tech Media LLC and Cyber F.M., a website that streams music, which income was not disclosed in the petition. Trial Tr., p. 55. The Defendant admitted that he was a co-creator of Cyber F.M., however he insists that it was a mere hobby, not a legal business entity. Trial Tr., p. 56, 61-67. Even though he had letterhead stating that he owned a registered trademark, he never legally registered the trademark. Trial Tr., p. 61. The Defendant testified that he never made any money from Cyber F.M., even though he admitted that the company solicited advertisements. Trial Tr., p. 69-71, 75. The Defendant also stated that he ceased his involvement with the website on December 10, 2010, coincidentally the same date he lost his job at Bank of America. Trial Tr., p. 76.

During the trial, the Plaintiffs produced several documents which state that the Defendant was an owner of Cyber F.M., as well as C-Tech Media LLC, which the Defendant claims never existed. Trial Tr., p. 59. According to James Tylee's Linked-in page, he was the C.E.O. and owner of C-Tech Media LLC and Cyber F.M as of December 28, 2011 and again as of January 16, 2012. Trial Tr., p. 57; Plaintiffs' Ex. 9. The Defendant asserted that this page is a mere fiction, and nothing written on it is true. Trial Tr., p. 80. Additionally, the Cyber F.M. webpage lists James Tylee as an owner as of January 16, 2012, and shows solicitation and pricing for advertisements, which the Defendant testified he knew nothing about. Trial Tr., p. 72; Plaintiffs' Ex. 8.

## DISCUSSION

**1.**     *1ˢᵗ and 2ⁿᵈ Causes of Action – Revocation of Discharge Pursuant to 11 U.S.C. § 727*

The Plaintiffs ask the Court to revoke the Defendants' bankruptcy discharge due to fraud and failure to report or deliver estate property.[2] Revocation of discharge is an extraordinary remedy, *Pergament v. Marandos (In re Marandos)*, 391 B.R. 556, 559 (Bankr. E.D.N.Y. 2008) (citations omitted), and is "construed liberally in favor of the debtor and strictly against those objecting to discharge." *Keeffe v. Natalie*, 337 B.R. 11, 13 (N.D.N.Y. 2006) (quoting *Bowman v. Belt Valley Bank (In re Bowman)*, 173 B.R. 922, 924 (9ᵗʰ Cir. BAP 1994)). However, a discharge under § 727 is a privilege, not a right, and may only be granted to the honest debtor. *Cong. Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994). The plaintiff bears the burden of establishing each of the elements of § 727 by a preponderance of the evidence. *See Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993); *see also* Fed. R. Bankr. P. 4005.

**a.** *Revocation of Discharge Pursuant to 11 U.S.C. § 727(d)(1)*

Section 727(d)(1) provides:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>    (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.

11 U.S.C. § 727(d)(1). A request to revoke a debtor's discharge under this section must be made within one year of the granting of the discharge. 11 U.S.C. § 727 (e)(1).

---

[2] The Plaintiffs' other causes of action included objecting to the granting of the Debtors' discharge under §§ 727(c)(1) and 727(a)(4)(A) and asking the Trustee to determine whether a ground for denial of discharge exists pursuant to § 727(c)(2). However, these sections are used to object to the granting of a discharge before it occurs. *See* 11 U.S.C. § 727(a), (c). Therefore, because the Defendants already received a discharge in this case, these claims are moot.

Section 727(d)(1) "requires that (1) the debtor obtained a discharge through fraud, and (2) the movant did not know of the fraud predischarge." *McCarthy v. Nandalall (In re Nandalall)*, 434 B.R. 258, 266 (Bankr. N.D.N.Y. 2010) (citation omitted). For the first element, the plaintiff must establish that the debtor committed actual fraud, and that timely knowledge of this fraud would have provided grounds for denial of discharge under § 727(a). *See Adams v. Zembko (In re Zembko)*, 367 B.R. 253, 256 (Bankr D. Conn. 2007); *see also Staten Island Savs. Bank v. Scarpinito (In re Scarpinito)*, 196 B.R. 257, 267 (Bankr. E.D.N.Y. 1996). For the second element, the plaintiff must establish that he neither knew, nor had reason to know, of the fraud prior to the granting of the debtor's discharge. *Nandalall*, 434 B.R. at 267.

### i. *First Element- Grounds for Denial of Discharge under § 727(a)*

Based on the evidence in this case § 727(a)(4)(A) provides the basis for establishing the Debtors' fraud. Section 727(a)(4)(A) provides:

> (a) The court shall grant the debtor a discharge, unless–
>   (4) the debtor knowingly and fraudulently, in or in connection with the case–
>     (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). Under this section, the Plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000).

The burden of showing actual fraudulent intent lies with the party objecting to the debtor's discharge. *Pergament v. Smorto* (*In re Smorto*), No. 07-CV-2727, 2008 WL 699502, at

\*4 (E.D.N.Y. Mar. 12, 2008). "Once the [plaintiff] has produced persuasive evidence of a false statement, the burden shifts to the debtor to come forward with evidence to prove that it was not an intentional misrepresentation or provide some other credible explanation." *See Periera v. Gardner (In re Gardner)*, 384 B.R. 654, 662-63 (Bankr. S.D.N.Y. 2008) (citations omitted). "While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a *prima facie* case." *Palmer v. Downey* (*In re Downey)*, 242 B.R. 5, 14, 15 (Bankr. D. Idaho. 1999) (other citations omitted).

"It is well established that a deliberate omission may constitute a false oath, and thus result in a denial of the discharge." *Crews v. Stevens (In re Stevens),* 250 B.R. 750, 754 (Bankr. M.D. Fla. 2000) (citing *Raiford v. Abney (In re Raiford),* 695 F.2d 521, 522 (11th Cir. 1983); and *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir. 1984)). A materially false statement made or omitted as part of the bankruptcy petition, schedules, at an examination or during the proceeding itself may constitute a false statement under oath for purposes of § 727(a)(4)(A). *New World Restaurant Group, Inc. v. Abramov* (*In re Abramov)*, 329 B.R. 125 (E.D.N.Y. 2005).

The plain language of this statute provides that one single false oath or account is sufficient to deny a debtor's discharge. *Olympic Coast Investment, Inc. v. Wright (In re Wright),* 364 B.R. 51, 73 (Bankr D. Mont. 2007) (citing *Smith v. Grondin (In re Grondin)*, 232 B.R. 274, 277 (1st Cir. BAP 1999), *Fogal Legware of Switzerland, Inc. v. Wills. (In re Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999), and *In re Beabouef*, 966 F.2d 174, 178 (5th Cir. 1992)). It is crucial for the successful administration of the estate that the debtor provide truthful information in connection with the bankruptcy case. *Dubrowsky v. Perlbinder* (*In re Dubrowsky)*, 244 B.R.

560, 572 (E.D.N.Y. 2000). "[T]he very purpose of . . . § 727(a)(4)(A), is to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs. The statutes are designed to insure that complete, truthful, and reliable information is put forward at the outset of the proceedings, so that decisions can be made by the parties in interest based on fact rather than fiction . . . ." *Boroff v. Tully* (*In re Tully*), 818 F.2d 106, 110 (1st Cir. 1987).

It is not enough under section 727(a)(4)(A) that a debtor is merely careless in the preparation of documents to be filed with Court, or in his testimony in connection with the case. The omission must rise to the level of showing fraudulent intent. *Painewebber, Inc. v. Gollomp* (*In re Gollomp)*, 198 B .R. 433, 437 (S.D.N.Y.1996). Fraudulent intent may be inferred from the circumstances of the case. *Sperling v. Hoflund* (*In re Hoflund)*, 163 B.R. 879, 882, 883 (Bankr. N.D. Fla. 1993). Such circumstances may include "inferences from the debtor's conduct, all surrounding circumstances, and the apparent course of conduct." *In re Downey*, 242 B.R. at 13 (other citations omitted). If a debtor is found to have exhibited a "reckless indifference to the truth," then that may be enough to establish fraudulent intent sufficient to deny the discharge. *See Diorio v. Kreisler-Borg Constr. (In re Diorio)*, 407 F.2d 1330 (2d Cir. 1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the bankrupt . . . . Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth . . . is the equivalent of fraud.") (citations omitted); *See also In re Dubrowsky*, 244 B.R. at 571-72.

Finally, the omissions and/or misstatements by a debtor must be material. However, "any matter bearing on the discovery of estate property or the disposition of the debtor's property is

material for purposes of § 727(a)(4)(A)." *In re Abramov*, 329 B.R. at 134. The Court of Appeals for the Second Circuit has held that whether the inclusion of the assets would have increased the value of the debtor's estate is not determinative of whether the omission is material. *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974). "The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious." *In re Chalik*, 748 F.2d at 618 (citing *In re Diorio*, 407 F.2d at 1330).

A debtor is obligated to disclose even worthless assets and unprofitable business transactions, as it is not for the debtor to determine whether the asset is relevant or important to disclose. The debtor is charged with answering the questions accurately and completely. *In re Abramov*, 329 B.R. at 134. Furthermore, there is no requirement that the omission cause direct financial prejudice to creditors. *In re Wright* 364 B.R. at 73 (citing *In re Weiner,* 208 B.R. 69, 72 (9th Cir. B.A.P. 1997), *rev'd on other grounds*, 161 F.3d 1216 (9th Cir. 1998) (other citations omitted)). An asset may be material even if it did not cause financial prejudice to the estate or creditors "if it aids in understanding the debtor's financial affairs and transactions." *In re Hoblitzell,* 223 B.R. 211, 215-16 (Bankr. E. D. Cal. 1998). For example, if the omission interferes with the ability to fully investigate potential preference or fraudulent conveyance actions, then the omission may be material. *In re Wright ,* 364 B.R. at 74.

"'Where persuasive evidence of a false statement under oath has been produced by a plaintiff, the burden shifts to the defendant to prove that it was not intentionally false. . . . Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel.'" *Wachovia Bank, N.A. v.*

*Spitko (In re Spitko)*, 357 B.R. 272, 313 (Bankr. E. D. Pa. 2006) (quoting *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993)).

In this case, the Defendants' schedules were rife with false information. First, the Defendants omitted their interest in Cyber F.M. from their schedules. While the Defendant claimed that this website was not a business, this story is implausible. The website solicits advertisements in order to fund operations and the Defendant listed this company on his Linked-in page, which included marketing materials for the site. Plaintiffs' Exhibit 9. The record reflects that the website is more than a mere "hobby," but rather a business which the Defendants failed to disclose. The Defendant was still obligated to disclose his interest in the website, even if he did not think it was financially significant. The Plaintiff made a prima facie case that this is an asset of value, and the Defendant was unable to explain otherwise. Regardless of the value of such asset, the omission interfered with a complete investigation of the Debtors' business affairs. The Court concludes that this was an intentional and material omission from the Debtors' schedules.

While the omission of such asset alone would be enough to provide grounds for the denial of the Debtors' discharge under § 727(a)(4)(A), the Debtors made additional false statements and omissions in their petition. The Defendants listed their rental expense in Schedule J as $2,300, even though they had no intention to continue making this payment at the time of filing, based on the agreement with the Plaintiffs to vacate the property. The Defendant admitted this false statement during the trial. The Defendants also failed to list the ongoing State Court Proceeding on their schedules. The assertion that the Debtors relied on their attorney to complete their paperwork does not provide an excuse for such an omission. The Court finds that the Debtors intentionally filed false documents in connection with their bankruptcy case. Had

there been an objection prior to the Debtors receiving their discharge, sufficient grounds would have existed for the denial of such discharge under § 727(a)(4)(A).  For these reasons, the Plaintiffs have satisfied their burden as to the first element of § 727(d)(1).

### ii. *Second Element- Plaintiff Did Not Have Knowledge of Fraud Prior to Discharge*

The second element of § 727(d)(1) requires that the party objecting to the discharge "did not know of such fraud until after the granting of such discharge."  11 U.S.C. § 727(d)(1).  The Plaintiff has the burden of proving its asserted lack of knowledge prior to the discharge.  *See Staten Island Sav. Bank v. Scarpinito (In re Scarpinito)*, 196 B.R. 257, 267 (Bankr. E.D.N.Y. 1996).

Usually, creditors will move to revoke a discharge based on information they acquired after the issuance of the discharge.  *See Holmes v. Burrell (In re Burrell)*, No. 06-01715, 2008 WL 3209620, at *3 (Bankr. S.D.N.Y. Aug. 6, 2008).  However, creditors must also receive proper notice in order to make a timely objection to discharge.  In order to receive proper notice of a bankruptcy filing, the debtor must file a schedule listing the names and addresses of known creditors.  11 U.S.C. § 521(1); Fed. R. Bankr. P 1007(a)(1); *see also Prisivko v. Malakhov (In re Malakhov)*, No. 07-01716, 2011 WL 65603 at *3 (Bankr. S.D.N.Y. Jan. 7, 2011).  Where a debtor fails to list creditors on the schedules, those omitted creditors do not receive timely notice of the bankruptcy and are not in a position to bring a § 727 action within the statutory timeframe. *See In re Malakhov*, 2011 WL 65603 at *4; *see also In re Hayes*, 270 B.R. 184, 186 (Omitted creditors are "deprive[d]…of any opportunity to attend the Section 341(a) meeting or otherwise exercise their rights in a timely fashion before the debtor was granted a discharge").

In this case, the Plaintiffs would have known that the Debtors' petition contained false information, as they were aware of the Debtors' actual income, their interest in Cyber F.M., and their actual rent expenditures. The Plaintiffs were also aware of the State Court Proceeding, which was omitted from the petition. While the Plaintiffs knew the Debtors' true state of affairs prior to the discharge, they had no knowledge of the Debtors' bankruptcy case until November 1, 2011, just one day before the Debtors received their discharge. The Plaintiffs could not have filed a timely objection to the Debtors' discharge, even though they knew of the falsity in the Debtors' documents. The Court finds, therefore, that the Plaintiffs did not have knowledge of the fraud until after the Debtors received their discharge and have satisfied their burden as to the second element of § 727(d)(1).

Because the Plaintiffs have satisfied both elements of § 727(d)(1) by a preponderance of the evidence, and have satisfied the timing requirement of § 727(e)(1) by commencing this action within one year of the granting of the discharge, the Debtors' discharge is hereby revoked pursuant to § 727(d)(1).

**b.** *Revocation of Discharge Pursuant to 11 U.S.C. § 727(d)(2)*

Section 727(d)(2) states:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
>> (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee.

11 U.S.C. § 727(d)(2). A request to revoke a discharge under this section must be made before the later of: (A) one year after the granting of such discharge, and (B) the date the case is closed. 11 U.S.C. § 727(e)(2).

This section requires a debtor to report any acquisition of estate property and deliver the property to the Trustee. *Nandalall*, 434 B.R. at 268. The requirement that the creditor prove that he was unaware of the fraud prior to discharge is left out of § 727(d)(2). However, some courts read this requirement from § 727(d)(1) into § 727(d)(2). *Id.* (citations omitted). There are four elements of this claim:

> "(1) that the debtor acquired or became entitled to acquire certain property; (2) the property in question was property of the bankruptcy estate (or would be upon its acquisition); (3) the debtor failed to report the acquisition of or entitlement to such property or to deliver or surrender such property to the trustee; and (4) in so failing to report or deliver or surrender the property, the [d]ebtor acted knowingly and fraudulently."

*Id* at 269. This section only applies to property acquired by the debtor post-petition. *See id. at* 270; *see also Gonzales v. Steffien (In re Steffien)*, 415 B.R. 824, 828-29 (Bankr. D.N.M. 2009).

Here, the Plaintiffs failed to allege, either in their complaint or during trial, that the Debtors acquired new property of the estate post-petition. Additionally, the Trustee reported prior to the discharge that there was no property available for distribution over and above that exempted by law. Once the Plaintiffs commenced this adversary proceeding, the Trustee revoked this original statement and again inquired into assets of the Defendants. However, the Trustee again reported that there were no assets available for distribution. The Plaintiffs failed to establish that the Debtors acquired new non-exempt assets after the Petition Date. Therefore, § 727(d)(2) is inapplicable and the Debtors' discharge may not be revoked pursuant to § 727(d)(2).

**2. *Turnover of Property Pursuant to 11 U.S.C. § 542(a)***

The Plaintiffs also request entry of a judgment or order directing the Debtors to deliver to the Trustee, and/or account for, their business interest in Cyber F.M., or in the alternative, the cash value of the same.  Section 542(a) reads:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

In a Chapter 7 case, "there is no textual basis in the Bankruptcy Code to support the notion that a non-trustee, such as a creditor: (a) has independent standing to pursue chapter 5 avoidance actions or other estate causes of action; or (b) may be granted derivative standing." *In re* Salander, 472 B.R. 213, 220 (Bankr. S.D.N.Y. 2012) (quoting *Reed v. Cooper (In re Cooper)*, 405 B.R. 801, 804 (Bankr. N.D.Tex. 2009)).  As such, the Plaintiffs do not have standing to bring this cause of action.  Although the Court finds that the Debtors own an undisclosed asset, a turnover action is reserved solely for the Trustee.  Therefore, the Trustee shall determine whether he should bring a proceeding to recover any assets of the estate.

## CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiffs satisfied their burden of proving that the Defendants obtained their discharge through fraud and misrepresentations. Therefore, the Defendants' discharge is revoked pursuant to 11 U.S.C. § 727(d)(1).  However, this Court will not issue an order directing the Debtors to turn over assets of the estate, as the Plaintiffs do not have standing to pursue this cause of action.  Additionally, the Defendants'

counterclaims are denied, as the Defendants failed to pursue those causes of action.  A judgment memorializing this decision shall be entered forthwith.


Dated: Central Islip, New York
       April 24, 2014


                                                  ***/s/ Robert E. Grossman***
                                                  Hon. Robert E. Grossman
                                                  United States Bankruptcy Judge